797 So.2d 783 (2001)
Mathew FIHLMAN
v.
NEW ORLEANS POLICE DEPARTMENT.
No. 2000-CA-2360.
Court of Appeal of Louisiana, Fourth Circuit.
October 31, 2001.
Rehearing Denied November 16, 2001.
*784 F. Gerald Desalvo, Frank G. Desalvo, A P.L.C., New Orleans, LA, Counsel for Plaintiff/Appellee.
Mavis S. Early, City Attorney, Franz L. Zibilich, Chief Deputy City Attorney, Joseph V. Dirosa, Jr., Deputy City Attorney, *785 New Orleans, LA, Counsel for Defendant/Appellant.
Court Composed of Judge MIRIAM G. WALTZER, Judge PATRICIA RIVET MURRAY, and Judge MAX N. TOBIAS, JR.
Judge MAX N. TOBIAS, JR.
The New Orleans Police Department ("NOPD") appeals a 2 May 2000 decision of the Civil Service Commission (the "Commission") reversing a ten-day suspension imposed on Officer Mathew Fihlman for his actions in causing what it deemed a preventable accident.

FACTS
The facts are not in dispute. Officer Fihlman is assigned to the First Police District and has achieved permanent status in the Civil Service System. On 27 October 1998, at shortly after 10 p.m., Officer Fihlman was responding to a Code 2 emergency call for assistance. He had activated his lights and siren and was traveling south on Governor Nicholls Street approaching its intersection with North Galvez Street. At that location, Governor Nicholls is a two-way, undivided roadway with a speed limit of 25 miles per hour. North Galvez is a one-way, two lane roadway with a speed limit of 35 miles per hour. The intersection is controlled by stop signs in both directions on Governor Nicholls. Officer Fihlman stopped at the intersection. He claims, however, that a building on the corner, two telephone poles, and a seven-foot shrub blocked his view of the traffic on North Galvez. As a result, when he slowly proceeded into the intersection, his vehicle collided with another police vehicle traveling east on North Galvez in response to the same emergency call.
The Traffic Accident Review Board conducted an administrative inquiry into the accident. It found that Officer Fihlman had stopped at the intersection and checked it for traffic before easing into the intersection. Nevertheless, the Board classified the accident as preventable, finding that Officer Fihlman had failed to yield the right-of-way to traffic and had struck another vehicle traversing legally through the intersection. Thereafter, by letter dated 24 February 1999, Superintendent Richard Pennington suspended Officer Fihlman for ten days for failing to maintain standards of service as prescribed by Rule IX, Section 1, paragraph 1.1 of the Rules of the Civil Service Commission for the City of New Orleans. That rule provides, in pertinent part, that when a classified employee is unable or unwilling to perform his duties in a satisfactory manner or has committed any act to the prejudice of the service, or otherwise has become subject to corrective action, the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service. This action may include, inter alia, suspension without pay not exceeding one hundred twenty calendar days. Superintendent Pennington noted that he considered Officer Fihlman's past driving record with the department in assessing the penalty against him. Officer Fihlman appealed to the Commission, and the matter was assigned to a hearing examiner. A hearing was held on 13 May 1999.
Officer Fihlman was the only witness to testify at the hearing. As mentioned previously, the NOPD did not disagree with his version of the accident.
At the hearing before the Commission, Officer Fihlman testified that the 1996 model police vehicle he was driving at the time of the accident sustained extensive damage and was totaled or near totaled. He stated that the vehicle was repaired *786 and he received it back at the end of February 1999.
Officer Edwin Ducote investigated the incident and completed a very detailed accident report. At the hearing, the parties agreed to stipulate to that report in lieu of having Officer Ducote testify live. In his report, Officer Ducote diagramed the intersection. According to that diagram, and the two-page narrative that followed, the stop sign on Governor Nicholls, at its intersection with North Galvez, is set back approximately ten feet from the corner. In addition, the line of sight at the intersection is obscured by the building bearing municipal address 1133 North Galvez and a seven-foot shrub located in front of the same address. The diagram also shows two wooden telephone poles between the stop sign and the curb on Governor Nicholls. According to both the accident report and the testimony of Officer Fihlman, the impact occurred just after Officer Fihlman had passed the divided line on North Galvez and was proceeding through the second lane of travel. Under the "violations" section of the report, Officer Ducote marked that Officer Fihlman had failed to yield. He checked off "no violations" with regard to the driver of the other police car involved in the accident. No citations were issued.
The Commission reviewed a copy of the transcript and all documentary evidence presented at the hearing.[1] In its decision rendered on 2 May 2000, the Commission found: "that Officer Fihlman acted responsibly and did not intentionally cause an accident on 27 October 1998. The fact that his vision was obstructed by the building and the absence of a proper four-way stop light made the accident unavoidable. The Commission finds that the action of the Appointing Authority was not supported by the testimony and evidence and the appeal is upheld."

APPLICABLE LAW
An employee who has gained permanent status in the classified city civil service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. The employee may appeal from such disciplinary action to the City Civil Service Commission. The burden of proof on appeal, as to the facts, shall be on the appointing authority. La. Const. art. X, § 8 (1974); Walters v. Department of Police of New Orleans, 454 So.2d 106, 112-113 (La.1984). The Commission's decision is subject to review on any question of law or fact upon appeal to the appropriate court of appeal. La. Const. art. X § 12(B).
The Commission has a duty to independently decide, from the facts presented, whether the appointing authority had good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed was commensurate with the dereliction. Walters, 454 So.2d at 113. Legal cause for disciplinary action exists whenever an employee's conduct impairs the efficiency of the public service in which that employee is engaged. Cittadino v. Department of Police, 558 So.2d 1311 (La. App. 4 Cir.1990). The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity occurred, and that such activity bore a real and substantial relationship to the efficient operation of the public service. Id. at 1315.
In reviewing the Commission's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is *787 commensurate with the infraction, this court should not modify the Commission's order unless it is arbitrary, capricious or characterized by an abuse of discretion. Walters, 454 So.2d at 114. "Arbitrary or capricious" means that there is no rational basis for the action taken by the Commission. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
The Commission has the authority to "hear and decide" disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. art. X, § 12; Branighan v. Department of Police, 362 So.2d 1221, 1223 (La.App. 4 Cir.1978). The legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. The protection of civil service employees is only against firing (or other discipline) without cause. Id. at p. 1222. (emphasis in original) Thus, in the instant case, unless the Commission determined that there was insufficient cause for the Superintendent to impose the ten-day suspension, the penalty must stand.
The superintendent of police is charged with the operation of his department and it is within his discretion to discipline an officer for sufficient cause. Id. at p. 1223.
In Palmer v. Department of Police, 97-1593 (La.App. 4 Cir. 1/28/98), 706 So.2d 658, we reversed the Commission's reversal of the NOPD's imposition of a two-day suspension where a prisoner in an officer's custody had escaped because the officer had not followed police procedure. In its decision, the Commission noted that it had found mitigating circumstances which needed to be taken into account in determining whether Officer Palmer's actions had impaired the efficient operation of the public service. We stated that Officer Palmer's actions either did, or did not impair the efficiency of the public service, despite mitigating circumstances. Finding that Officer Palmer's actions clearly impaired the efficiency of the public service, we held that the Commission's opinion that the two-day suspension was inappropriate was simply a substitution of its judgment for that of the appointing authority.
Similarly, in Chapman v. Department of Police, 97-1384 (La.App. 4 Cir. 1/28/98), 706 So.2d 656, we rejected the Commission's reduction of a suspension from thirty to ten days, holding that the Commission is not charged with the operation of the NOPD or disciplining its employees. Importantly, we noted that the Commission had concluded that Chapman had violated departmental regulations, but it believed that the thirty-day suspension was "too harsh" under the circumstances. We concluded that the Commission's action was simply a substitution of its judgment for the Superintendent's judgment. We found that the Superintendent had sufficient cause to impose the penalty and that the NOPD carried its burden of proof. The Commission's action was an arbitrary and capricious interference with the authority of the Superintendent to manage his department.
In Smith v. New Orleans Police Department, 00-1486 (La.App. 4 Cir. 4/11/01), 784 So.2d 806, we reversed the Commission's reduction of a suspension from five days to two days for an officer's failure to complete an investigation of a shoplifting incident by writing a police report and confiscating surveillance tapes that showed the alleged perpetrator fleeing the scene. At the Civil Service hearing, the NOPD called the officer who investigated the charges against Officer Smith, as well as the Captain who had conducted a Commander's hearing on those charges. Both testified that Officer Smith should have prepared a *788 police report. In addition, Officer Smith testified to having two sustained, and one pending, suspensions for neglect of duty. Thus, we found ample evidence to show that the Superintendent acted reasonably and with sufficient legal cause in imposing a five-day suspension under the circumstances of the case.
In Stevens v. Department of Police, XXXX-XXXX (La.App. 4 Cir. 5/9/01), 789 So.2d 622, we reversed the Commission's reduction of a suspension from fifteen days to ten days for an officer's running of a stop sign and causing an accident with another vehicle. At the hearing before the Civil Service hearing examiner, the parties had stipulated that at the time of the accident, Officer Stevens was responding to an emergency call and a large oak tree obstructed his view of the stop sign. Additionally, the NOPD called Deputy Superintendent Johnson, Chairman of the Traffic Accident Review Board that had investigated the accident, who testified that the Board had voted to suspend Officer Stevens based on his failure to yield the right of way and the severity of the accident. He further testified that Officer Stevens' police vehicle had sustained property damage totaling $7,570 and remained inoperable for nearly a year which further burdened the NOPD's already heavily burdened fleet of patrol vehicles. The Commission concluded that the appointing authority had suspended Officer Stevens for just cause; nevertheless, it found that the fifteen day suspension was not commensurate with the dereliction and reduced it to ten days in view of Officer Stevens' exemplary record and the appointing authority's previously imposed disciplinary action in similar cases. We held that the Commission's reduction of the suspension was an arbitrary and capricious interference with the Superintendent's authority to manage the police department.
On the other hand, in Smothers v. Department of Police, XXXX-XXXX (La.App. 4 Cir. 5/16/01), 787 So.2d 1110, we affirmed the Commission's reversal of the NOPD's imposition of a three-day suspension where an officer was charged with failure to appear as a witness in municipal court in response to a subpoena. We found that the record supported the Commission's view of the facts and its decision. Accordingly, we held that the Commission was within its authority to reverse the NOPD's action because the Commission determined that Smothers was not disciplined for cause. In so holding, we noted that the Commission had done what it was supposed to do it prevented the NOPD from acting arbitrarily.

DISCUSSION
In its sole assignment of error, the NOPD argues that the Commission acted arbitrarily and capriciously in reversing the ten-day suspension imposed by the Superintendent and exceeded its constitutional authority by substituting its judgment for that of the appointing authority.
We disagree. The NOPD had the burden of proving to the Commission, by a preponderance of the evidence, the facts upon which it based its disciplinary action against Officer Fihlman. The NOPD called no witnesses at the hearing. Instead, it merely questioned Officer Fihlman and agreed to stipulate to the accident report prepared by Officer Ducote. Officer Fihlman testified that several obstructions blocked his view of any traffic traveling on North Galvez. Those obstructions were clearly noted in the accident report. In addition, as noted in the disciplinary letter, the Traffic Accident Review Board found that Officer Fihlman had stopped at the intersection and checked it for traffic before easing into it. As such, we cannot say that the Commission's finding that the appointing authority failed to *789 prove that the accident was preventable was manifestly erroneous.
Furthermore, the NOPD offered no evidence of how Officer Fihlman's actions impaired the efficient operation of the public service other than the conclusory statement in Superintendent Pennington's disciplinary letter that Officer Fihlman had disregarded laws and policies governing traffic laws and safe driving practices and that his conduct was contrary to the standards of service prescribed by Rule IX of the Rules of the Commission. As such, although the facts of the instant case are remarkably similar to those in Stevens, that case is distinguishable because therein the NOPD offered testimony regarding how the officer's actions violated police policy or otherwise impaired the efficient operation of the police department. Here, the appointing authority simply failed to offer any evidence concerning how Officer Fihlman's actions impaired the efficient operation of the public service.
Finally, although Superintendent Pennington referred to Officer Fihlman's past driving record with the department in his decision to impose the ten-day suspension, the NOPD offered no evidence whatsoever with regard to Officer Fihlman's prior driving record.
The Commission found that "the action of the appointing authority was not supported by the testimony and evidence." Viewing the record as a whole, we cannot say that the Commission's decision was manifestly erroneous. As we found in Smothers, there is ample evidence in the record to support the Commission's view of the facts and its decision. The NOPD simply failed to prove to the Commission that it had legal cause to suspend Officer Fihlman or that a ten-day suspension was commensurate with the infraction. As such, the Commission's decision to reverse that suspension was not arbitrary or capricious, nor can its decision be viewed as an improper substitution of its judgment for that of Superintendent Pennington.
Accordingly, the judgment of the Civil Service Commission reversing the ten-day suspension imposed upon Officer Fihlman by the NOPD is affirmed.
AFFIRMED.
NOTES
[1] There is no indication that the Traffic Accident Review Board's report was offered into evidence by the NOPD at the Commission hearing.