970 So.2d 1106 (2007)
John DESHOTEL
v.
DEPARTMENT OF POLICE.
No. 2007-CA-0363.
Court of Appeal of Louisiana, Fourth Circuit.
October 24, 2007.
*1107 Frank G. Desalvo, Desalvo Desalvo & Blackburn, APLC, New Orleans, LA, for Plaintiff/Appellee, John Deshotel.
Penya Moses-Fields, City Attorney, Joseph V. Dirosa, Jr., Chief Deputy City Attorney, Heather M. Valliant, Assistant City Attorney, Victor L. Papai, Jr., Assistant City Attorney, New Orleans, LA, for Defendant/Appellant, Department of Police.
(Court composed of Judge DENNIS R. BAGNERIS, SR., Judge MAX N. TOBIAS, JR., Judge LEON A. CANNIZZARO, JR.)
CANNIZZARO, J.
The defendant/appellant, New Orleans Police Department ("NOPD"), appeals from a decision in favor of the plaintiff, Sergeant John Deshotel, rendered by the New Orleans Civil Service Commission("CSC"). After reviewing the record and applicable law, we affirm the decision.

FACTS AND PROCEDURAL HISTORY
Sergeant Deshotel was stationed at the New Orleans Superdome prior to, during, and after Hurricane Katrina. He was responsible for the supervision of five other NOPD officers during that time. At approximately 5:30 a.m., on Saturday, September 3, 2005, Sergeant Deshotel made the decision to leave his post without obtaining permission from his chain of command. He stated that when he left, most of the occupants of the Superdome had been evacuated. He further stated that he heard that once the Superdome was empty, his unit would be immediately assigned to the Convention Center. The reason for his departure was to obtain life-saving heart medication for his 80-year old mother who had refused to evacuate New Orleans before the storm. Sergeant Deshotel testified that he did not ask permission from his immediate superior because he knew that his request would be denied. Sergeant Deshotel also knew that his actions could result in some kind of discipline. He returned within twenty-four (24) hours and discovered that his unit was relieved from duty at 1:00 p.m. the previous day. Sergeant Deshotel testified that while he did not obtain permission before leaving his post, he did leave telephone *1108 messages with his supervisor during the period he was absent. The parties stipulated that if called to testify, Sergeant Deshotel's superior officer would have stated that he did not give Sergeant Deshotel permission to leave his duty assignment.
By letter dated December 21, 2005, the NOPD gave Sergeant Deshotel the minimum thirty-day suspension for neglect of duty, and an additional ten days because he was a supervisor. He appealed the forty-day suspension.
The decision of the NOPD was assigned to a hearing officer and was heard on March 8, 2006, at which time testimony was presented. The hearing officer found that the facts underlying the NOPD's decision, i.e. abandonment, were proven. However, the hearing officer found that Sergeant Deshotel's actions did not give rise to the level of discipline imposed by the NOPD. Although the hearing officer found that Sergeant Deshotel should have obtained permission before leaving and did not, the hearing officer recommended that the CSC uphold the appeal in light of the limited time he was gone and the reason for leaving his post.
The CSC reviewed the hearing officer's recommendation and agreed that the facts of the matter were proven. However, the CSC unanimously found that the NOPD failed to establish by a preponderance of the evidence that it disciplined Sergeant Deshotel for cause. It stated that the NOPD abused its authority by failing to consider Sergeant Deshotel's mitigation and establish that his actions undermined the efficient operation of the department. The NOPD timely filed the instant appeal.

LAW AND DISCUSSION
The NOPD has assigned two errors for review. First, it contends that the CSC acted arbitrarily in disregarding the stipulation between the parties when it found that the NOPD failed to establish that it disciplined Sergeant Deshotel for cause. In addition, the NOPD argues that the CSC erred in substituting its own judgment for that of the NOPD where cause exists and where the discipline imposed was commensurate with the discipline imposed against all other similarly situated officers.
An employee who has gained permanent status in the classified city civil service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. The employee may appeal from such disciplinary action to the CSC. The burden of proof on appeal, as to the facts, shall be on the appointing authority. La. Const. art. X, § 8 (1974); Walters v. Department of Police of New Orleans, 454 So.2d 106, 112-113 (La.1984). The CSC's decision is subject to review on any question of law or fact upon appeal to the appropriate court of appeal. La. Const. art. X § 12(B).
The CSC has a duty to independently decide, from the facts presented, whether the appointing authority had good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed was commensurate with the dereliction. Walters, 454 So.2d at 113. Legal cause for disciplinary action exists whenever an employee's conduct impairs the efficiency of the public service in which that employee is engaged. Cittadino v. Department of Police, 558 So.2d 1311 (La. App. 4 Cir.1990). The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity occurred, and that such activity bore a real and substantial relationship to the efficient operation of the public service. Id. at 1315.
*1109 In reviewing the CSC's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, this court should not modify the CSC's order unless it is arbitrary, capricious, or characterized by an abuse of discretion. Walters, 454 So.2d at 114. "Arbitrary or capricious" means that there is no rational basis for the action taken by the CSC. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
The CSC has the authority to "hear and decide" disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. art. X, § 12; Fihlman v. New Orleans Police Department, 00-2360 (La. App. 4 Cir. 10/31/01), 797 So.2d 783. The legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. The protection of civil service employees is only against firing (or other discipline) without cause. Id. at p. 5, 797 So.2d at 787. Thus, in the instant case, unless the CSC determined that there was insufficient cause for the Superintendent to impose the forty-day suspension, the penalty must stand.
The superintendent of police is charged with the operation of his department and it is within his discretion to discipline an officer for sufficient cause. Id.
In this case, the CSC noted in its written decision that the NOPD presented no fact witnesses at the hearing. The CSC also noted that NOPD Assistant Superintendent Steven Nicholas had testified that although Sergeant Deshotel should have obtained permission before leaving his post, Sgt. Deshotel's supervisor would have granted him permission to leave had he requested it. Furthermore, in rendering its decision, the CSC adopted the following findings from the hearing examiner's report:
The Appellant responded to the call to duty without questions. He was assigned, accepted, and worked around the clock in the first week at the unbelievable and horrific confines of the Superdome. He was on duty for those first six days attempting to provide security, save lives, and give some semblance of hope to the citizens waiting for rescue.
Considering the fact that so many [a]ppeals are of officers who just failed to report, or who reported and decided to desert the citizens of New Orleans, this [a]ppeal is very different. This is an officer who was there, remained on duty, and did leave for a few hours to assist his mother who was in need of medicine. After doing so, he immediately returned to his duty assignment . . .
The facts of the matter are proven. However, the Hearing Examiner finds that the actions on the part of the Appellant do not give rise to the level of discipline in this particular Appeal.
The Appellant was there for the citizens of New Orleans. And, he did not leave to assist his mother until after the evacuation was completed by the late arriving federal troops. And, the fact that his unit was relieved of duty on that day at about one o'clock proves that his job was done.
After reviewing the record in this matter, we agree with the CSC's finding that the NOPD did not establish by a preponderance of the evidence that it disciplined Sergeant Deshotel for cause. The NOPD failed to present any evidence whatsoever that Sergeant Deshotel's conduct bore a real and substantial relationship to the efficient operation of the public service. Thus, we conclude that the CSC neither erred nor abused its discretion when it *1110 granted Sergeant Deshotel's appeal and ordered the NOPD to return to him forty days of back pay and the emoluments of employment.

DECREE
Accordingly, the decision of the CSC is affirmed.
AFFIRMED.
BAGNERIS, J. concurs with reasons.
TOBIAS, J., dissents with reasons.
BAGNERIS, J., concurring.
I respectfully concur and find that this Court should affirm the findings of the Civil Service Commission. In the days of Katrina the City of New Orleans and those in civil service were faced with new and unique circumstances. Sergeant Deshotel has been working with the New Orleans Police Department since 1987 and during the days of Katrina the CSC found that he continued to serve this City during its darkest days. Sergeant Deshotel seized the little window of opportunity that he had to obtain heart medicine for his eighty-year old mother. He had the decency to telephone his supervisor and report his whereabouts.
I find that the Commission is in the best posture to determine whether the NOPD sufficiently established that it met its burden of proof. "In reviewing the commission's findings of fact, the court should not reverse or modify such a finding unless it is clearly wrong or manifestly erroneous. In judging the Commission's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, the court should not modify the Commission's order unless it is arbitrary, capricious or characterized by abuse of discretion." Lombas, 467 So.2d at 1275, quoting Walters v. Department of Police of the City of New Orleans, 454 So.2d at 114. Cittadino v. Department of Police 558 So.2d 1311 (La.App. 4 Cir.1990).
I think that Sergeant Deshotel's suspension for forty days for neglect of duty was not commensurate to the violation considering the mitigating circumstances. I understand that the Superintendent put into place emergency orders imposing clear penalties for officers who failed to report or remain for duty thus requiring a 30-day suspension for any unauthorized absence of two hours up to six days. I also believe that this punishment was imposed for those limited circumstances in which some officers chose to outright not serve the City; whose whereabouts were unknown; who failed to contact their supervisor; and who took on a selfish, self-serving role to protect themselves only. Sergeant Deshotel did none of that.
TOBIAS, J., dissenting.
I respectfully dissent. I would reverse and reinstate the discipline imposed by the New Orleans Police Department ("NOPD").
The majority has ignored certain facts in the record. For example, Sergeant Deshotel admitted under oath that he did not ask permission to leave his posting at the Louisiana Superdome from his immediate superior because he knew that his request would be denied. Sergeant Deshotel also stated under oath that he knew that his actions would result in some kind of discipline. It is undisputed that Sergeant Deshotel was responsible for the supervision of five other NOPD officers at the Superdome at the time he left his post.
The majority argues that the NOPD did not prove that Sergeant Deshotel's actions bore a real and substantial relationship to the efficient operation of the public service, relying on the fact that the Superdome *1111 had been substantially evacuated and his unit was relieved of duty several hours after he left. However, the majority ignores Sergeant Deshotel's admission that he was actively supervising five officers when he left his post. No evidence exists that Sergeant Deshotel advised his men of his departure, or that he spoke to another supervising officer to take command of his officers. More importantly, Sergeant Deshotel did not know that his unit was going to be relieved of duty when he left. Instead, Sergeant Deshotel testified that he left when he did because he was under the impression that his unit was going to be immediately assigned to police the New Orleans Convention Center. While I might be persuaded to reduce the amount of discipline imposed on Sergeant Deshotel because the discipline imposed appears harsh, I cannot condone his behavior and neither should the majority or the New Orleans Civil Service Commission.
As we noted in McElrath v. Department of Police, 06-1288, p. 1 (La.App. 4 Cir. 5/23/07), 959 So.2d 566, 567:
On August 27, 2005, due to the approach of Hurricane Katrina, Superintendent Eddie Compass placed the New Orleans Police Department in "Activation Status" in order to mobilize departmental personnel for emergency operations upon the hurricane's making landfall. Pursuant to this status, all essential personnel were required to report to duty and remain on duty until relieved. It was made clear that only the Superintendent himself could grant furlough to an officer who sought to be relieved of duty after the storm. [Emphasis added.]
We further stated:
The appellants were aware that only the Superintendent himself could grant furlough to an officer who sought to be relieved of duty after the storm, but left anyway. Although the appellants [sic] actions were understandable, that does not change the fact that they violated the rule laid down by the Superintendent. The purpose of this rule was to centralize control of the police force under the Superintendent and avoid chaos in organizing and administering rescue efforts following the hurricane.
Id. at pp. 3-4, 959 So.2d at 568 [emphasis added].
These same facts apply to Sergeant Deshotel's case. He left his post without permission, thereby violating the rule laid down by the Superintendent. Based on the logic of the majority, every officer on duty, given sufficient "mitigating circumstances" in the officer's subjective opinion, was entitled to leave his/her post without permission if that officer believed that his/her job was finished. How many desertions does it take for there to be a real and substantial relationship to the efficient operation of the public service? I find that the NOPD met its burden of proof and thus dissent from a decision to find that Sergeant Deshotel should not be punished for violating rules of the Superintendent of Police.