981 So.2d 720 (2008)
Christopher CORNELIUS
v.
DEPARTMENT OF POLICE.
Christopher Cornelius
v.
Department of Police.
Nos. 2007-CA-1257, 2007-CA-1258.
Court of Appeal of Louisiana, Fourth Circuit.
March 19, 2008.
*721 Claude A. Schlesinger, C. Theodore Alpaugh III, Guste Barnett Schlesinger Henderson & Alpaugh, L.L.P., New Orleans, LA, for Plaintiff/Appellant.
*722 Penya Moses-Fields, City Attorney, Nolan P. Lambert, Chief Deputy City Attorney, James B. Mullaly, Assistant City Attorney, New Orleans, LA, for Defendant/Appellee.
(Court composed of Judge DENNIS R. BAGNERIS, SR., Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY).
MAX N. TOBIAS, JR., Judge.
The plaintiff/appellant, Christopher Cornelius ("Officer Cornelius"), a nine-year veteran of the New Orleans Police Department ("NOPD"), appeals from two consolidated cases wherein he received two suspensions totaling eight days. After reviewing the record and applicable law, we reverse the New Orleans Civil Service Commission ("CSC"), set aside the penalties levied by it, and direct that a letter of reprimand for the 25 September 2005 incident be placed in Officer Cornelius' file.[1]
The events giving rise to these consolidated cases began on the afternoon of 25 September 2005, shortly after Hurricane Rita. At roll call, Officer Cornelius and the other officers were told that the cruise ship on which the police officers had been living had returned to New Orleans. The officers were instructed that a general order had issued for all NOPD personnel to return to the ship at their discretion to re-register and check their cabins to make sure that all their belongings were present. The NOPD was then located at the Wal-Mart on Tchoupitoulas Street, which they had commandeered shortly after Hurricane Katrina. There was little activity in the city and patrolling was difficult due to debris in the streets.
At about dusk, Officer Cornelius and his partner, Officer Jacqualine Robinson ("Officer Robinson"), were patrolling the Sixth District. Because of the lack of activity, they decided to follow orders and go to the cruise ship to re-register, check their rooms and eat; the cruise ship was the only place they could eat at that time. The parking area had over 200 vehicles there; because of the delayed shuttle bus, the officers decided to walk to the ship with their belongings. The amount of luggage between them required two trips.
Once on the ship, they re-registered, checked out their cabins, and ate. Unfortunately, Officer Cornelius had a reaction to something he ate that resulted in diarrhea. Shortly thereafter, he received a signal "21," which is a citizen's complaint. He responded and asked the nature of the call so that he would be prepared upon arrival. Officer Cornelius was told that the call was "per 610," which meant that it originated from Lieutenant St. Germaine, his superior officer. (Officer Cornelius and his partner had been on the cruise ship for approximately two hours.)
Unbeknown to Officers Cornelius and Robinson, while they were on the ship, Lieutenant St. Germaine and Sergeant Ronald Dassel, the platoon sergeant, were keeping an eye on the officers' patrol car. They were concerned that the vehicle had been there far too long. Sergeant Dassel proceeded to investigate whether or not that was true. He returned to the Sixth District station and typed an interoffice memorandum advising Officer Cornelius to contact him or Lieutenant St. Germaine upon returning to the vehicle. That memorandum was placed on the windshield of the vehicle. Sergeant Dassel passed by *723 repeatedly to record the times the vehicle remained in the parking lot.
A short time later, Lieutenant St. Germaine contacted the command desk and requested that Officers Cornelius and Robinson respond to them at the intersection of Jackson and Baronne Streets. They arrived on the scene about 20 minutes later.
When the officers arrived at the designated location, they were surprised to see Lieutenant St. Germaine, and Sergeants Dassel and Miestovich. Immediately, they were separated and questioned why they had been on the cruise ship for two hours. Both officers explained what had happened. At no time during the questioning were the officers told that there was an investigation in progress or that a complaint had been filed. On 26 September 2005, a complaint was filed against Officer Cornelius charging him with failing to devote his entire time to duty and a truthfulness violation; Officer Robinson was also charged with failing to devote her entire time to duty. The truthfulness charged was dismissed. However, the violation of failing to devote his entire time to duty was sustained and a three-day suspension was assessed. Officer Robinson was found to have violated the same provision; a letter of reprimand was placed in her file.
Officer Cornelius appealed the violation to the CSC. A hearing was held, after which the CSC denied the appeal. However, two of the three commissioners on the CSC panel concurred with the following comments:
I concur with the decision in this case; the fact of the violation is proven. However, I find the actions of the supervisor [Sergeant Dassel] who first noted the violation to be troubling. The Police Department styles itself as a quasi-military organization; military protocol would have first required the supervisor to attempt to determine the officer's whereabouts from him directly before suspecting Neglect of Duty, absent some other evidence to the contrary. Suspicion and investigation without rational basis leads to mutual distrust and poisons employee morale.
This appeal followed.
The second incident occurred the next day, 26 September 2005. Officer Cornelius and his partner were working the day shift that consisted of 13 hours due to the aftermath of Hurricane Katrina. At the noon roll call, Sergeant Willie Davis, the senior sergeant and platoon commander, assigned Officers Cornelius and Robinson to be stationed at a roadblock on Interstate 10. After handing out all the daily assignments, Sergeant Davis instructed the officers to go downstairs and eat. While he was eating and waiting for his radio to charge, Sergeant Dassel came up to Officer Cornelius and began yelling, telling him to leave immediately without finishing his food and without his charged radio. Officer Cornelius testified that he asked: "Sarge, with all we're going through and all we're dealing with, why are you giving us so much s*~#!." According to Sergeant Dassel, Officer Cornelius said: "I don't need your s*~#!"
Sergeant Dassel made a complaint that went to the Public Integrity Bureau ("PIB"). The subsequent investigation found sustained violations of professionalism and instructions from an authoritative source. Officer Cornelius received a five-day suspension and a letter of reprimand, respectively.
Officer Cornelius appealed to the CSC, which conducted a hearing. The CSC denied the appeal of the professionalism violation, but granted the instructions appeal and ordered the letter of reprimand be *724 removed from Officer Cornelius' file. This appeal followed.
As the result of a motion filed by Officer Cornelius, the two cases were consolidated in this court.
Officer Cornelius has assigned two errors for review. First, he contends that the CSC erred in upholding both violations because the NOPD did not prove by a preponderance of the evidence that the events took place as alleged. Second, he contends that the CSC erred in upholding the violations because the NOPD failed to prove by a preponderance of the evidence that the alleged events bore a reasonable and substantial relationship to the efficient operation of the public service.
An employee who has gained permanent status in the classified city civil service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. The employee may appeal from such disciplinary action to the CSC. The burden of proof on appeal, as to the facts, shall be on the appointing authority. La. Const. art. X, § 8 (1974); Walters v. Department of Police of City of New Orleans, 454 So.2d 106, 112-113 (La. 1984). The CSC's decision is subject to review on any question of law or fact upon appeal to the appropriate court of appeal. La. Const. art. X § 12 B.
The CSC has a duty to independently decide, from the facts presented, whether the appointing authority had good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed was commensurate with the dereliction. Walters, 454 So.2d at 113. Legal cause for disciplinary action exists whenever an employee's conduct impairs the efficiency of the public service in which that employee is engaged. Cittadino v. Department of Police, 558 So.2d 1311 (La. App. 4 Cir.1990). The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity occurred, and that such activity bore a real and substantial relationship to the efficient operation of the public service. Id. at 1315.
In reviewing the CSC's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, this court should not modify the CSC's order unless it is arbitrary, capricious, or characterized by an abuse of discretion. La. R.S. 49:964; Walters, 454 So.2d at 114. "Arbitrary or capricious" means that there is no rational basis for the action taken by the CSC. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647; Shields v. City of Shreveport, 579 So.2d 961 (La. 1991).
The CSC has the authority to "hear and decide" disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. art. X, § 12; Fihlman v. New Orleans Police Department, 00-2360 (La. App. 4 Cir. 10/31/01), 797 So.2d 783. The legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. The protection of civil service employees is only against firing (or other discipline) without cause. Id. at p. 5, 797 So.2d at 787. The superintendent of police is charged with the operation of his department and it is within his discretion to discipline an officer for sufficient cause. Id. The CSC must be mindful that
[t]he public puts its trust in the police department as a guardian of its safety, and it is essential that the appointing authority be allowed to establish and enforce appropriate standards of conduct for its employees sworn to uphold that trust. Newman . . . [v. Department *725 of Fire, 425 So.2d 753 (La.1983)]. Indeed, the Commission [CSC] should give heightened regard to the appointing authorities that serve as special guardians of the public's safety and operate as quasi-military institutions where strict discipline is imperative.
Stevens v. Dept. of Police, 00-1682, p. 8 (La.App. 4 Cir. 5/9/01), 789 So.2d 622, 627.
Although the NOPD treated the facts giving rise to this appeal as two separate events, we agree with Officer Cornelius that the two must be treated as one. We do not believe that Sergeant Dassel would have approached Officer Cornelius as he did on 26 September 2005 had the event from the night before not occurred.
Like the two CSC commissioners quoted above, we, too, are troubled by Sergeant Dassel's actions on the evening of 25 September 2005. Instead of contacting Officer Cornelius directly, he spent over an hour conducting surveillance on the officer's patrol car. Then, instead of making a complaint and permitting an independent investigation to proceed, Officer Dassel decided to conduct his own investigation and, in essence, ambush Officers Cornelius and Robinson in a darkened part of the city. In addition, we find no rational explanation for a three-day suspension when Officer Robinson, who was found to have committed the same violation, received a letter of reprimand. In this regard, we find the CSC's actions to be arbitrary and capricious. Thus, we set aside the suspension and find that a letter of reprimand is an appropriate discipline.
As for the second matter, we find that, while unprofessional, the NOPD did not prove by a preponderance of the evidence that Officer Cornelius' statement to Sergeant Dassel bore a real and substantial relationship to the efficient operation of the public service. Therefore, we  reverse the CSC and set aside the five-day suspension.
Based on the foregoing, we set aside the suspensions imposed on Officer Cornelius and order that a single letter of reprimand for the 25 September 2005 incident be placed in his file and that nothing be placed in Officer Cornelius' file for the 26 September 2006 alleged incident.
AFFIRMED IN PART; REVERSED IN PART; AMENDED IN PART; RENDERED.
NOTES
[1] Officer Cornelius has no prior disciplinary history and has received commendations during his time on the force. He remained at his post during and after Hurricanes Katrina and Rita and, according to his commanding officer at that time, Officer Cornelius was a very good officer.