999 So.2d 54 (2008)
Tamara GRANT
v.
DEPARTMENT OF POLICE.
No. 2007-CA-1171.
Court of Appeal of Louisiana, Fourth Circuit.
November 19, 2008.
*55 Frank G. Desalvo, Desalvo Desalvo & Blackburn, APLC, New Orleans, LA, for Appellant, Tamara Grant.
James B. Mullaly, Assistant City Attorney, Joseph V. Dirosa, Jr., Chief Deputy City Attorney, Penya Moses-Fields, City Attorney, New Orleans, LA, for The Department of Police.
(Court composed of Judge JAMES F. McKAY, III, Judge EDWIN A. LOMBARD, Judge Pro Tempore MOON LANDRIEU).
MOON LANDRIEU, Judge Pro Tempore.
In this appeal, the appellant, Tamara Grant, seeks review of a decision by the New Orleans Civil Service Commission ("CSC") affirming the discipline imposed on her by the appellee/appointing authority, the New Orleans Police Department ("NOPD"), for professional misconduct. The appellant ("Officer Grant") was suspended for one-hundred twenty (120) days for committing battery on two police officers, unprofessional behavior and misrepresenting facts during an internal investigation, as well as permanently dismissed for obstructing the arrest of a suspect by another police officer. Upon review of the record and applicable law, we affirm the decision of the CSC.

UNDERLYING FACTS
On the afternoon of July 2, 2004, while in the parking lot of the NOPD Fifth District Substation, Officer Grant[1] was preparing to go on duty, and Officer Valentino Grayman was coming off duty. The officers shared a patrol unit and, while swapping out their personal items, Brian Hartman, Officer Grant's former fiancé approached. Relying on information provided at daily roll calls, Officer Grayman was aware that warrants were issued for the arrest of Mr. Hartman, at the request of Officer Grant, for domestic abuse and the theft of her personal vehicle. When Officer Grant walked a short distance away and started speaking to another police officer, Officer Grayman directed Mr. Hartman to turn and face the police vehicle and place his hands behind his back. While Officer Grayman was taking measures to place handcuffs on Mr. Hartman so that he could check on the status of the warrants, Officer Grant told Officer Grayman to desist because the warrants were no longer outstanding. Notwithstanding, *56 Officer Grayman continued his efforts to place the handcuffs on Mr. Hartman, advising he still wanted to personally check on the status of the warrants. Thereafter, Officer Grant became visibly distressed over Mr. Hartman's detention, which caused Mr. Hartman to disregard Officer Grayman's directives. Officer Grant then hampered Officer Grayman's efforts to handcuff Mr. Hartman by persistently moving between the two men. She jumped up and down in protest, and loudly directed profane language at Officer Grayman.
Several police officers witnessed the riotous situation from a distance. When the circumstances appeared to become more volatile, Officer Don Cotton asked Officer Grayman whether he needed assistance. Although Officer Grant stated none was needed, Officer Grayman answered in the affirmative. Officer Cotton approached, and advised Officer Grant on several occasions to permit Officer Grayman to do his job. He assured her Mr. Hartman would be released and offered an apology in the event the warrants had been withdrawn. However, Officer Cotton's attempts to calm Officer Grant down were to no avail. She only became more belligerent. Recognizing Officer Grant kept placing her hand on her gun located on her belt, Officer Cotton feared gunfire might ensue. As such, Officer Cotton stepped back and unlocked the snap on his holster preparing to respond in the manner necessary.
Ultimately, Officer Grant carried through with her threats to contact their superiors. Upon waiting for their arrival, Officer Grayman handcuffed Mr. Hartman, and was able to formally determine the warrants were no longer outstanding and that he was a convicted felon.

Procedural History
Subsequently, an investigation of the incident was conducted by the NOPD's Public Integrity Bureau ("PIB"). Among other individuals, Officer Grant gave a recorded statement in July 2006. Specifically, she stated that she initially thought Officer Grayman was playing a joke when he asked Mr. Hartman to put his hands behind his back. Officer Grant testified that, when Officer Grayman would not acknowledge her claims that the warrants were no longer outstanding, she simply "touched" him on his arm and called their superiors. She denied striking Officer Grayman or interfering with the arrest in any way. Particularly, she contended she did not tell Mr. Hartman that he did not have to give his name when requested by Officer Grayman. While Officer Grant stated she did not threaten Officer Grayman verbally or physically, she did concede she used profanities to describe the "messed up" situation.[2] She contradicted assertions made by other witnesses in their statements that she placed her hand on her belt in a threatening manner. Officer Grant claimed she simply placed on her hand on her belt so she could reach for her cell phone to call her superiors. As to her relationship with the suspect, Officer Grant admitted that she put the warrants out on Mr. Hartman because he had battered her on several occasions and took her personal vehicle without authorization.
A hearing was conducted before representatives of the Operations and Public Integrity Bureaus on September 7, 2006, *57 wherein Officer Grant was afforded the opportunity to explain her conduct and offer mitigating evidence. Finding the absence of such evidence, it was recommended to the Superintendent of Police that Officer Grant be suspended for one-hundred twenty (120) days stemming from the following violations: Departmental Internal Rule 2-MSC 54-96 relative to Battery on a Police Officer[3] involving Officers Grayman and Cotton; Departmental Internal Rule 2 relative to Truthfulness[4] involving misrepresentations made by Officer grant during the course of the PIB investigation; and Departmental Internal Rule 3 relative to Professionalism[5] stemming from Officer Grant's actions on the day of the incident and during the resulting investigation. It was further recommended that Officer Grant be dismissed from the NOPD for a violation of Departmental Internal Rule 2-MSC 54-411 relative to Resisting and Obstructing a Police Officer.[6] In a letter dated September 7, 2006, NOPD Superintendent Warren Riley advised Officer Grant of his approval of the proposed discipline. Hearing Examiner Exhibit 1 from CSC Hearing. Subsequently, she filed an appeal with the CSC pursuant to Article X, Section 8(A) of the Constitution of the State of Louisiana, 1974.
The CSC assigned the matter to a hearing examiner, who conducted a formal hearing over the course of two days where several police officers testified. Officer Grant's testimony corroborated in large part her earlier recorded statement. She further added that Officer Grayman had first hand knowledge that the warrants were no longer outstanding when he sought to handcuff Mr. Hartman. However, she conceded that, if Officer Grayman did not know the warrants had been withdrawn, she would not dispute that his actions were reasonable and that she would not have intervened on behalf of the suspect.
Sergeant Debra Randolph, the police officer who led the PIB investigation, testified that several statements had been taken in connection with the investigation of the incident involving Mr. Hartman. She contended the witnesses' statements were consistent that Officer Grant became very enraged, pushed and elbowed Officer Grayman over the handcuffing of Mr. Hartman. Sergeant Rudolph stated the witnesses all agreed these actions led to *58 Mr. Hartman becoming violent and resisting arrest. Sergeant Randolph maintained the statements indicated Officer Grant threatened Officer Grayman through the use of profane language. As to her conclusions in the PIB investigation, she determined Officer Grant misrepresented that she did not interfere, curse, or strike Officer Grayman. Finally, Sergeant Rudolph opined that, based on her professional knowledge, it was irrelevant that Mr. Hartman was not wanted on the outstanding warrants because Officer Grayman was conducting lawful police business. She also stated that it was proper procedure for Officer Grayman to handcuff the suspect in order to detain him to complete the investigation.
Officer Alicia Wright testified as to what she witnessed from a distance in the parking lot of the Fifth District Substation when she was getting off work. She stated she heard a commotion and saw Officer Grant yelling that the person being detained did not have any warrants. She stated she saw Officer Grant "pushing" Officer Grayman, and that Officer Cotton approached to assist Officer Grayman. She contended that Officer Grant broke loose from Officer Cotton, who was trying to calm her down, and continued to "push" and "yell" several profanities at Officer Grayman. While admitting she was not totally certain, Officer Wright stated she believed Officer Grant's profanities were threats to inflict bodily harm on Officer Grayman.
Officer Cotton was the last person to testify at the hearing. He stated that, although he saw Officer Grayman struggling with the suspect, Officer Grant insisted his intervention was unnecessary. Officer Cotton stated he nevertheless approached and learned that Officer Grayman simply wanted to run the suspect's name based on the warrants. He testified Officer Grant kept "pushing" Officer Grayman and getting between him and the suspect. Officer Cotton stated the situation escalated as Officer Grant became more upset. He noted that she was holding her gun belt as she was jumping up and down, and that he "backed off and unsnapped his gun because he was unsure if she was going to pull her weapon on Officer Grayman. Officer Cotton stated that Officer Grant threatened Officer Grayman through the use of obscenities. When asked whether he thought Officer Grant would shoot Officer Grayman, Officer Cotton answered "[a]t one time I did believe that." Hearing Transcript 11/16/06 at p. 26.
On February 6, 2007, the hearing examiner issued his report finding Officer Grant clearly engaged in misconduct, noting she should have not interfered in the investigation of the suspect. He stated, if Officer Grant believed Officer Grayman was acting in bad faith, she could have filed a complaint against her co-worker in lieu of causing a scene. While the hearing examiner determined Officer Grant did not strike or touch her weapon in a threatening matter, he nevertheless concluded she "technically" caused a battery of Officers Grayman and Cotton because she touched them in an unauthorized manner while they were trying to handcuff the suspect. Finally, he cited as misconduct Officer Grant's use of profane language.
On July 17, 2007, the CSC issued its decision denying Officer Grant's appeal. The CSC recognized the evidence was conflicting as to the factual issues of whether Officer Grayman struck or attempted to use her weapon. While it surmised Officer Grant did not engage in such misconduct, it determined it did not have to resolve the dispute in order to address the appeal. As the basis for denying the appeal, the CSC stated:

*59 We conclude that Appellant actively and unreasonably interfered with the conduct of a fellow police officer in a proper effort to detain a suspect while it was being determined if there were outstanding warrants. She refused to back off even after Officer Cotton told her "if he [Hartman] is not wanted . . . we'll let him go about his way . . . we'll apologize to him . . . after we run his name." Appellant used vulgar language while in uniform in a loud manner in a public place and the evidence indicates that her intrusion into the situation may have been the cause for emotions to flare and for Mr. Hartman to become belligerent. She also was untruthful to the PIB investigator in denying interference.
Though it is unfortunate that this isolated incident in Appellant's career caused her to lose her job, we cannot say that the Appointing Authority exceeded its discretion in terminating Appellant. Appellant's lack of emotional control is disturbing for a police officer carrying a gun and could have led to more tragic consequences in the volatile incident involved in this case.

CSC Decision at p. 3.
The CSC affirmed the discipline imposed by the appointing authority, namely, the one-hundred (120) day suspension for battery on Officers Grayman and Cotton, unprofessional conduct and misrepresentation of facts in the PIB investigation, as well as termination from employment for resisting and obstructing the arrest of Mr. Hartman.
Officer Grant timely filed her appeal seeking review of the CSC's ruling affirming the sanctions imposed on her.

LAW AND DISCUSSION
As her assignments of error, Officer Grant contends the CSC acted arbitrarily and capriciously in affirming the discipline imposed by the NOPD. She contends there is insufficient evidence to support the charges. Moreover, Officer Grant urges, in the event the court finds the sufficient evidence to support the violations, the discipline imposed by the NOPD is not commensurate with the violations at issue.
The standard of review in civil service disciplinary matters was set forth by this court in Deshotel v. Department of Police, 07-0363, p. 3-4 (La.App. 4 Cir. 10/24/07), 970 So.2d 1106, 1108-1109:
An employee who has gained permanent status in the classified city civil service cannot be subjected to disciplinary action by his employer except for cause expressed in writing. The employee may appeal from such disciplinary action to the CSC. The burden of proof on appeal, as to the facts, shall be on the appointing authority. La. Const. art. X, § 8 (1974); Walters v. Department of Police of New Orleans, 454 So.2d 106, 112-113 (La.1984). The CSC's decision is subject to review on any question of law or fact upon appeal to the appropriate court of appeal. La. Const. art. X § 12(B).
The CSC has a duty to independently decide, from the facts presented, whether the appointing authority had good or lawful cause for taking disciplinary action and, if so, whether the punishment imposed was commensurate with the dereliction. Walters, 454 So.2d at 113. Legal cause for disciplinary action exists whenever an employee's conduct impairs the efficiency of the public service in which that employee is engaged. Cittadino v. Department of Police, 558 So.2d 1311 (La.App. 4 Cir. 1990). The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained of activity occurred, and that such activity *60 bore a real and substantial relationship to the efficient operation of the public service. Id. at 1315.
In reviewing the CSC's exercise of its discretion in determining whether the disciplinary action is based on legal cause and the punishment is commensurate with the infraction, this court should not modify the CSC's order unless it is arbitrary, capricious, or characterized by an abuse of discretion. Walters, 454 So.2d at 114. "Arbitrary or capricious" means that there is no rational basis for the action taken by the CSC. Bannister v. Department of Streets, 95-0404, p. 8 (La.1/16/96), 666 So.2d 641, 647.
The CSC has the authority to "hear and decide" disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. art. X, § 12; Fihlman v. New Orleans Police Department, 00-2360 (La.App. 4 Cir. 10/31/01), 797 So.2d 783. The legal basis for any change in a disciplinary action can only be that sufficient cause for the action was not shown by the appointing authority. The protection of civil service employees is only against firing (or other discipline) without cause . . . Id. at p. 5, 797 So.2d at 787.
(Emphasis added; italic in original.)
Applying these principles of law, we find the record overwhelmingly supports the imposition of discipline against Officer Grant for her misconduct involving battery of a police officer, resistance to and obstruction of an arrest, unprofessionalism and untruthfulness. The recorded statements of the witnesses taken during the course of the PIB investigation were absent from the record, including the relevant statements of Officer Grayman and Mr. Hartman.[7] Notwithstanding, our consideration of the testimony adduced at the hearing, coupled with Officer Grant's recorded statement submitted into evidence, indicates that Officer Grant engaged in battery stemming from the unauthorized touching of her fellow officers during the course of the arrest. We find no merit in the appellee's contention that the record inexplicably indicates Officer Grant struck Officer Grayman or that she intended to use her weapon. Nonetheless, the evidence unquestionably indicates Officer Grant obstructed and caused resistance to the lawful detention of Mr. Hartman. Her boisterous use of vulgar language and offensive actions directed at another officer engaged in the lawful commission of his duties in a public place poorly reflects on her commitment to the NOPD and the public. Finally, the record provides compelling evidence discrediting the veracity of Officer Grant's version of the facts.
Based on these conclusions, the only issue to be addressed is whether the CSC was arbitrary or capricious, or abused its discretion, in finding sufficient cause to support the discipline imposed by the NOPD. In addressing this issue, we are mindful that the disciplining and dismissing of employees for sufficient cause is within the scope of the duties entrusted to the Superintendent of Police, the appointing authority in this case, for the efficient operation of his department. Moreover, the CSC is not the Superintendent's supervisor and, as such, not charged with the operation of the NOPD or the disciplining of its employees. Deshotel, p. 4, 970 So.2d at 1109.
*61 As to our detailed review of the record, we find the proposed discipline of a one-hundred twenty (120) day suspension to be appropriate for the cited misconduct. While the evidence supports the battery offenses were technical violations, Officer Grant's actions reflect her disrespect for her fellow workers. Logically, Officer Grayman's primary motive to detain Mr. Hartman was to ensure the safety of Officer Grant and her property since he was aware she pursued criminal charges against the suspect for domestic battery and theft. Further, we find her public use of profane language and blatant misrepresentation of the facts giving rise to these charges are indicative of her lack of the necessary character and integrity to uphold her position with the NOPD in absence of discipline.
Lastly, we conclude Officer Grant's dismissal from the police force for her resistance and obstruction to the arrest of Mr. Hartman is supported by the record. As stated, her raucous display of emotion discredited the NOPD and undermined her ability to serve the public. More importantly, her conduct threatened the safety of Mr. Hartman, Officer Grayman and Officer Cotton, as well as those persons present in the surrounding area at the time of the incident.[8] Most troubling, Officer Grant does not appear to appreciate the seriousness of her actions, much less exhibit any remorse for such. Therefore, we agree with the CSC's legal finding that the discipline imposed by the NOPD is commensurate with the infractions. The termination of Officer Grant from her employment is supported by the evidence.
In sum, the CSC neither erred nor abused its discretion in adopting the discipline imposed on Officer Grant by the NOPD.

DECREE
Accordingly, the decision of the CSC is affirmed.
NOTES
[1] Officer Grant was hired by the NOPD on April 29, 2001. Her appointment to Police Officer I, her permanent status at the time of the incident at issue in these proceedings, was effective on February 24, 2002.
[2] Contrary to the statements of other police officers taken in connection with the investigation of the incident, Officer Grant denied telling Officer Grayman she was going to "f____ him up." Rather, she claimed she stated: "You know what, Grayman [?] F____ you since this is the way you feel." City Exhibit 1 from CSC Hearing, Recorded Statement 7/13/06 at p. 4.
[3] Departmental Internal Rule 2(1)-MSC 54-96 provides: "Battery of a Police Officer is committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a Police Officer acting in the performance of his duties."
[4] Departmental Internal Rule 2 entitled "Moral Conduct", section 3 provides: "Truthfulness. Upon the order of the Superintendent of Police, the Superintendent's designee or a superior officer, employees shall truthfully answer all questions specifically directed and narrowly related to the scope of employment and operations of the Department which may be asked of them."
[5] Rule 3 entitled "Professional Conduct", section 1 provides: "Professionalism. Employees shall conduct themselves in a professional manner with the utmost concern for the dignity of the individual with whom they are interacting. Employees shall not unnecessarily inconvenience or demean any individual or otherwise act in a manner which brings discredit to the employee of the Police Department."
[6] Departmental Internal Rule 2(1)  MSC 54-411 provides, in pertinent part: "Resisting/Obstructing and Officer is the intentional opposition or resistance to or obstruction of, an individual acting in his official capacity and authorized by law to make lawful arrest or seizure of property, or to serve any lawful process or court order, when the offender knows or has reason to know that the person arresting, seizing property, or serving process is acting in his official capacity."
[7] At the time of the CSC hearing, Officer Grayman was on sick leave from the NOPD. The record indicates the appellee took measures to obtain his presence at the hearing, but to no avail.
[8] The hearing testimony of Officer Cotton indicated the Fifth District Substation was located next to a day care center, where some children were being dismissed at the time of the incident giving rise to these proceedings.