EDWARD A. DUFRESNE, JR., Chief Judge.
liiThis is an appeal by Jonathan Wyatt, plaintiff-appellant, from a judgment sustaining a determination by the Harahan Municipal Fire and Police Civil Service Board that his termination by the Harahan Police Department was done in good faith and for cause. For the following reasons we affirm that judgment.
Because of our disposition of this matter we need not recite the facts in detail as they are well known to the parties. We do note the following particulars, however, because they are essential to understanding our resolution of this appeal. In early April of 2004, Wyatt rear-ended another vehicle while driving his police unit. The driver of the other vehicle, Danny Wall, eventually gave a statement to the Hara-han Police to the effect that Wyatt asked him at the scene not to report the accident because if he did Wyatt feared that he would lose his job. Wall also said that his right taillight was broken. He also said that Wyatt gave him his cell phone number. Wall’s passenger, Nicholas Cordero, corroborated this version of events |sand noted that a headlight of the police unit was broken in the accident and that there was glass in the street.
Several days later Wall tried twice to call Wyatt about the damage to his vehicle, but both times a man answered and said that Wall had a wrong number. The number that Wall got from Wyatt was indeed Wyatt’s cell phone number. At that point Wall decided to call the Harahan Police. On April 6, Wall reported the accident and the next day Detective Blackwell was assigned to open a criminal investigation into the matter. It was later determined that at the time of the accident Wall was driving with a suspended license and had no liability insurance. Wall’s suit against the department for damage to his vehicle was settled, and Cordero’s suit for personal injuries is still pending.
On Saturday, April 3, at about 8:05 PM, Wyatt had called in a report that his unit had been vandalized while he was stopped at a convenience store for a business check. Officer Adams went to the scene and found that a headlight of the unit was broken. Although his initial report indicated vandalism, he later testified that the scene was suspicious for two reasons: first, the headlight fragments were in a small pile rather than dispersed as would be expected from a blow to the light, and second, the unit was parked behind the store in a dark area rather than in the lighted front of the business as would be normal for a “business check” which is intended to show police presence.
Although officers with the Harahan department are required to report any accidents within 24 hours of their occurrence, Wyatt did not report the accident with Wall until April 6, and in that report he gave the date of the incident as April 6. He also stated there that there had been no damage to either vehicle.
After conducting his investigation, Blackwell referred the matter to the Jefferson Parish District Attorney’s office and criminal charges were brought |4against Wyatt by that office in regard to the vandalism report. Based in part on the results of the Blackwell investigation, the Harahan Police Chief decided to open a disciplinary action. He assigned this task to Officer Cazanavette on June 5, and that investigation was completed by late July and resulted in two disciplinary actions. The first involved Wyatt’s failure to report the accident promptly, and the second was based on an allegation that he had falsified the report asserting that his unit had been vandalized at the convenience store. A pre-termination hearing was set for Au *852 gust 5, but was continued by Wyatt until August 17.
During the above investigations, yet another matter concerning Wyatt arose. On April 16, Wyatt submitted a psychiatric report stating that because of work related stress he needed a 30 work day sick leave, and that was granted. In early May he submitted another report from his doctor indicating an additional 60 days sick leave, which was also granted. Then in late June Chief Dale learned that Wyatt was working private details in violation of regulations requiring officers on sick leave to remain at home except for necessary shopping and doctors’ visits, and to get pre-approval for all private details. The chief also noted that Wyatt was being paid by the department while on sick leave, and was being paid for the private detail as well. On the basis of this information another disciplinary proceeding was begun.
It appears that Wyatt learned of this inquiry and submitted a request that regular leave be substituted for the requested sick leave. This request was denied by Chief Dale because as he testified at the Civil Service hearing he did not intend to return an officer to duty who was on sick leave for stress on advice of his psychiatrist until that doctor released him as fit for duty.
By the time of the August 17 hearing Wyatt was thus facing three separate disciplinary proceedings: one for failure to report an accident timely, a second for | Smisusing sick leave by leaving home and working details, and a third for submitting a false police report concerning vandalism of his unit. At that hearing at the police department he was found to have acted improperly on all three allegations and was terminated. He appealed to the Civil Service Board, which sustained the actions of the Police Department on all three matters finding that the department had acted in good faith and for cause.
Wyatt appealed those determinations to the district court, but again suffered an adverse ruling. He now brings this appeal from the district court judgment and urges two assignments of error. In the first he argues that the accident did not occur until after he reported the vandalism to his unit, and that the vandalism report was in fact truthful. He asserts that the contrary findings by the department and board thus should not have been cumulated with the other two infractions so as to justify his termination. His second assignment alleges that the disciplinary investigation of the accident and vandalism report took more than 60 days as required by La. R.S. 40:2531(B)(7) and therefore the disciplinary proceeding should be set aside.
In Moore v. Ware, 2001-3341 (La.2/25/03), 839 So.2d 940, 945-946, the court set forth the law as to civil service appeals as follows:
An employee under classified service may appeal from any decision of the civil service board that is prejudicial to him. La.Rev.Stat. Ann. Sec. 33:2501(E)(1). Such an appeal shall be taken to the district court wherein the civil service board is domiciled. Id. This hearing “shall be confined to the determination of whether the decision of the board was made in good faith and for cause” and “[no] appeal shall be taken except on these grounds.” La.Rev.Stat. Ann. Sec.33:2501(E)(3).
If made in good faith and statutory cause, a decision of the civil service board cannot be disturbed on judicial review. Good faith does not occur if the appointing authority acted arbitrarily or capriciously, or as a result of prejudice or political expediency. Arbitrary or capricious means the lack of a rational *853 basis for the action taken. The district court should accord deference to a civil service board’s factual conclusions and must not overturn them unless they are manifestly erroneous. Likewise, the | ¿intermediate appellate court and our review of a civil service board’s findings of fact are limited. Those findings are entitled to the same weight as findings of fact made by a trial court and are not to be overturned in the absence of manifest error. (Citations omitted).
The role of the appellate courts is thus circumscribed by deference to determinations made by civil service boards and we must affirm those determinations if they are reasonable on the record.
Here Wyatt was alleged to have violated police department regulations in three regards. The first relates to his failure to submit a timely report of the accident as required by regulations. He does not dispute that he did not timely file such a report. The second concerns leaving home and working details while on sick leave. Again, he does not dispute that he violated these regulations. The third involves his making a false report as to his unit being vandalized which he denies.
To understand his argument as to the vandalism report the facts of the accident need to be examined in detail. There is no question that the vandalism report was made a little after 8 PM on April 3, a Saturday. When Wall and Cordero were later interviewed by Officer Blackwell they were uncertain of the exact time or date of the accident. However it was established that Cordero worked until 10 PM at a country club on both Friday, April 2, and Saturday, April 3. Blackwell went to the club and interviewed Mr. Butler, Cordero’s boss. Butler said that he remembered clearly that he was watching a Final Four basketball game when Cordero reported to work on Saturday, April 3, and told him all about the accident. He said that Cordero particularly noted that his cousin Wall had escaped citations for driving with a suspended license and without insurance. Butler said that this conversation could not have taken place on Sunday, April 4, because there were no Final Four games that day.
17Based on this information it was clearly reasonable to find that the accident occurred sometime between 10 PM Friday, April 2, when Cordero left work, and midday on Saturday, April 3, when he reported it to Butler. Because the vandalism report was made at about 8 PM on Saturday, April 3, the alleged vandalism would necessarily have occurred after the accident. This was a factual finding made by the department and affirmed by the board, and as there is a reasonable basis for this finding, we cannot set it aside on appeal.
The next issue involves application of La. R.S. 40:2531(B)(7). That statute provides that a disciplinary investigation must be completed within 60 days. However, it also states that “nothing in this paragraph shall limit any investigation of alleged criminal activity.” Here, Officer Blackwell began an investigation into the facts surrounding Wyatt’s submission of a vandalism report on April 7. That investigation resulted in a referral to the district attorney for criminal prosecution. Clearly this was an inquiry into “criminal activity” and thus not governed by the 60 day rule. The record shows that the disciplinary action was not begun by Agent Cazanavette until June 5, and it was completed in time to schedule a hearing on August 5. There was thus no violation of the 60 day rule.
Our review of the entire record of the civil service hearing shows that the conclusions of the civil service board that the police department acted in good faith and *854 for cause in terminating Wyatt was not arbitrary and capricious, and further that the factual findings underlying this determination were not manifestly erroneous. We therefore must affirm the judgment of the district court upholding the action of the department and the board.
For the foregoing reasons the judgment of the district court is hereby affirmed.

AFFIRMED.