TOBIAS, J.,
dissents and assigns reasons.
_jjl respectfully dissent. The error of the majority: a misunderstanding of the difference between an informal DI-3 investigation and a formal DI-1 investigation (“Initiation of a Formal Disciplinary Investigation”) conducted by the appointing authority. I would reverse the judgment of the Civil Service Commission (“CSC”) and order that Officer O’Hern be restored to his position with all the emoluments and benefits due him together with an award of attorney’s fees for this appeal.
I agree with the majority that the facts are undisputed. They are stated substantially as I would. I do, however, note additional facts that I find pertinent to a proper resolution of this case; I therefore restate the facts as I view them based upon the record before us.
Officer O’Hern was a classified Police Officer II on duty on 12 December 2009. During his tour of duty, Officer O’Hern left his patrol assignment, and went to his private vehicle. He drove his vehicle to the top floor of a parking garage where he consumed a substantial portion of a fifth of Johnny Walker Black Label |2whiskey, and ingested ten to twelve prescription Clona-zepam tablets. Officer O’Hern then discharged his firearm more than twenty times, shooting through the vehicle’s roof and windshield. Reports were called into the NOPD and units rushed to the scene. Initially, the NOPD believed that Officer O’Hern had been engaged in a gun battle with unknown perpetrators.
At the scene, the responding officers found Officer O’Hern incapacitated and unable to control his bodily actions. He was evacuated to medical facilities, and subsequently told medical personnel that he put *1047 his service revolver to his head. His medical records reveal that his blood alcohol level at the hospital was 0.105%.
On 12 December 2009, the day of the incident, the NOPD issued a formal Form DI-1: “Initiation of a Formal Disciplinary Investigation,” which was signed by Sergeant Lawrence Jones, who was assigned to the Public Integrity Bureau. The gist of the complaint was that Officer O’Hern’s actions on that day gave rise to possible violations of “Rule 2: Moral Conduct; Paragraph 1: Adherence to Law, to wit, R.S. 14:94 Relative to the illegal use of weapons or dangerous instrumentalities.” Four days later, Officer O’Hern was given written notice of a formal NOPD internal disciplinary investigation, as well as his rights and responsibilities as a civil servant. The notice was from Sergeant Jones and was signed by both Officer O’Hern and Sergeant Jones on 16 December 2009 at 12:44 p.m.
|sThe city argues that the NOPD began its criminal investigation of Officer O’Hern’s actions on 12 December 2009. On 14 January 2010, Officer O’Hern was arrested for a violation of La. R.S. 14:94 and placed on emergency suspension. Thereafter, on 26 January 2010, Sergeant Jones turned his criminal investigation over to the District Attorney’s Office for a determination of whether criminal charges would be filed. On 5 March 2010, the NOPD issued a notice to Officer O’Hern, compelling an administrative statement, which took place on 11 March 2010 with his attorney present.
On 27 April 2010, Sergeant Jones provided Officer O’Hern written notice of the completion of the internal investigation and the sustained charges of misconduct. The parties agree that the investigation was formally completed on 6 May 2010. Officer O’Hern was terminated from the NOPD on 27 October 2010.
Officer O’Hern timely appealed the 27 October 2010 disciplinary letter to the CSC. A hearing was held before a hearing officer on 4 August 2011. The CSC issued its ruling on 20 February 2012 upholding the termination imposed by the NOPD.
Although Officer O’Hern has assigned four errors for our review, his first assigned error is dispositive: he claims that the CSC erred in affirming the discipline because the investigation took over sixty days to complete in violation of La. R.S. 40:2531 B(7).
La. R.S. 40:2581 sets forth the minimum standards that shall apply to the investigations of law enforcement officers. Pursuant to La. R.S. 40:2531 B(7), the | ¿investigation of a law enforcement officer shall be completed within sixty days. However, prior to the 2007 amendments to La. R.S. 40:2531, the statute contained no penalty provision for non-compliance within that sixty-day time frame.
In Marks v. New Orleans Police Department, 06-0575 (La.11/29/06), 943 So.2d 1028, the Louisiana Supreme Court considered the issue of whether, under the pre-amendment version of La. R.S. 40:2531, the failure to comply with the statutory “minimum standards,” by failing to complete the investigation within sixty days, required summary dismissal of the charges against an officer. Noting that the statute contained no penalty provision for noncompliance, the Court held that the failure to comply with the sixty-day time period did not require summary dismissal of a disciplinary action. Rather, the Court concluded that failure to comply with the sixty-day time period may impact whether discipline should be imposed or the type of discipline imposed if prejudice to the officer was demonstrated due to the delay. Id. at pp. 11-12, 943 So.2d at 1036.
*1048 The following year, the Legislature amended La. R.S. 40:2531 by 2007 Acts, Nos. 91 and 258. In 2007 Acts, No. 91, the Legislature amended subsection B(7) of La. R.S. 40:2581 to add language providing that the chief of police or his authorized representative shall initiate an investigation within fourteen days of the date that a formal and written complaint is made against a law enforcement officer. Act No. 91 also added the following language to subsection B(7):
The investigation shall be considered complete upon notice to the police employee or law enforcement officer under investigation of a pre-disciplinary hearing or a determination of an unfounded or un-sustained | r,complaint. Further, nothing in this Paragraph shall limit any investigation of alleged criminal activity.
[Emphasis supplied.]
Additionally, by 2007 Acts, No. 258, the Legislature added subsection C to La. R.S. 40:2531, providing as follows:
C. There shall be no discipline, demotion, dismissal or adverse action of any sort taken against a law enforcement officer unless the investigation is conducted in accordance with the minimum standards provided for in this Section. Any discipline, demotion, dismissal or adverse action of any sort whatsoever taken against a law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity. [Emphasis supplied]
The effective date of these amendments was 15 August 2007.
The NOPD contends that the administrative investigation of Officer O’Hern did not exceed the sixty-day limit because there was first an investigation of Officer O’Hern’s alleged criminal activity, which is not governed by the sixty-day rule, quoted above. In support of this argument, the NOPD relies on Wyatt v. Harahan Municipal Fire and Police Civil Service Board, 06-0081 (La.App. 5 Cir 7/25/06), 935 So.2d 849. However, Wyatt was decided before the amendments to La. R.S. 40:2531 in 2007 and is, therefore, inapplicable to the matter before us.
Instead, I rely on Cornelius v. Department of Police, 09-1459 (La.App. 4 Cir. 6/9/10), 41 So.3d 617, wherein a similar issue was raised. Instead of a criminal investigation, an “informal ” DI-3 investigation was opened immediately after the complaint was made. That informal investigation was completed and closed. It was then that the formal investigation began, which Officer Cornelius argued violated the sixty-day rule. Therein we stated:
| (iln his second assignment of error, Officer Cornelius argues that the investigation terminated when he received notice that the informal DI-3 investigation was completed, and therefore, reopening the case constituted a violation of his bill of rights as a police officer. However, this assignment of error is without merit. Once it was determined that this case needed to be formally investigated, there was a timely request for an extension of time to conduct a formal investigation on January 23, 2008, and a letter was sent to Officer Cornelius on January 29, 2008, giving him notice. Thereafter, on January 25, 2008, the case became a DI-1 and was assigned to Sgt. LaRoache. When Sgt. LaRoache received the DI-1 investigation, he sent Officer Cornelius a notice to appear and render a formal statement. Officer Cornelius appeared and made a recorded and transcribed statement on March 25, 2008. Accordingly, the discipline imposed resulted from a timely DI-1 formal investigation in compliance with the sixty day rule. There *1049 fore, there was no bill of rights violation and the discipline is not an absolute nullity.
Id. at pp. 5-6, 41 So.3d at 621.
In the instant case, the formal investigation, evidenced by the DI-1, was opened on the day of the event, 12 December 2009. Therefore, without a timely request for an extension of time in which to complete the formal investigation, the sixty days ran on or about 10 February 2010.[1] The criminal investigation was |7completed on 26 January 2010, the date the matter was turned over to the District Attorney’s office. All that remained was the taking of Officer O’Hern’s administrative statement, which could have easily been compelled within the sixty-day mandatory time period. In fact, Sergeant Jones stated during the hearing that no new information was obtained during its administrative investigation with the exception of obtaining Officer O’Hern’s statement.[2] While I agree that La. R.S. 40:2531 B(7) does not affect the time period in which a criminal proceeding *1050 must |8be brought, I do not read the statute as creating a “tolling” period for the administrative investigation to begin or end. The language of La. R.S. 40:2581 B(7) is clear and unambiguous. Therefore, I find merit to Officer O’Hern’s first assignment of error and agree that the discipline imposed on him by the NOPD is an absolute nullity. The remainder of the majority opinion is thus dicta.
(Court composed of Judge MAX N. TOBIAS, JR., Judge DANIEL L. DYSART, Judge SANDRA CABRINA JENKINS).

. La. R.S. 40:2531 B(7) provides for a sixty-day extension of the investigation period, as was done in Cornelius, supra, provided certain procedures are followed and good cause is shown:
However, in each municipality which is subject to a Municipal Fire and Police Civil Service law, the municipal police department may petition the Municipal Fire and Police Civil Service Board for an extension of the time within which to complete the investigation. The board shall set the matter for hearing and shall provide notice of the hearing to the police employee or law enforcement officer who is under investigation. The police employee or law enforcement officer who is under investigation shall have the right to attend the hearing and to present evidence and arguments against the extension. If the board finds that the municipal police department has shown good cause for the granting of an extension of time within which to complete the investigation, the board shall grant an extension of up to sixty days. Nothing contained in this Paragraph shall be construed to prohibit the police employee or law enforcement officer under investigation and the appointing authority from entering into a written agreement extending the investigation for up to an additional sixty days.

. Sergeant Jones stated that they could not compel Officer O’Hern’s administrative statement because of the pending criminal investigation. However, the CSC stated in its judgment in footnote one:
Appellant is constitutionally protected against self-incrimination and the Appointing Authority cannot compel a statement if the statement is used for or is admissible in a criminal proceeding. Hence, in the vernacular of the department, such a statement is referenced as a “criminal statement”. Conversely, a "compelled” or "administrative statement” is not admissible in a criminal proceeding. The Appointing Authority has the option of ordering or compelling an employee to provide a statement in an internal investigation for administrative purposes/intemal discipline. However, by compelling a statement, the Appointing Authority loses its ability to use the statement for purposes of criminal prosecution.
This statement by the CSC is in accordance with other provisions in the law, such as La.C.Cr.P. art. 439.1, which addresses compelled testimony before grand juries:
C. The witness may not refuse to comply with the order on the basis of his privilege against self incrimination, but no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information, may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement or otherwise failing to comply with the order.
See also and cf., e.g., La. R.S. 51:711 D(2); State v. Delcambre, 97-1447 (La.App. 3 Cir. 4/29/98), 710 So.2d 846; Evans v. DeRidder Mun. Fire, 01-2466 (La.4/3/02), 815 So.2d 61. Thus, Sergeant Jones could not compel Officer O’Hern to provide a "criminal statement,” which he requested and was refused. However, he could have compelled an "administrative statement” from Officer O’Hem but could not have turned same over to the District Attorney’s office for use in the criminal proceeding.