MAX N. TOBIAS, JR., Judge.
| Sergeant Tyrone Robinson (“Robinson”) seeks review of the decision of the New Orleans Civil Service Commission (“CSC”), denying his appeal of the discipline imposed upon him by the appointing authority, the New Orleans Police Department (“the NOPD)”. For the following reasons, we reverse the judgment and dismiss the discipline imposed.
I.
On 1 September 2009, the NOPD issued a disciplinary letter to Robinson, stating therein that it had determined that Robinson violated the rules (a) relative to moral conduct by committing a battery and (b) performance of duty by failing to timely contact his precinct after he arrived at a paid detail. For the first violation, Robinson received a thirty-day suspension. For the second violation, Robinson received a letter of reprimand.
Robinson appealed the suspension to the CSC which appointed a hearing officer to receive testimony.
*1273 12At the hearing, Captain John Thomas of the Public Integrity Bureau (“the PIB”) testified for the NOPD. The PIB received a formal and written complaint regarding Robinson on 4 March 2008. Captain Thomas identified the DI-1 issued in this case, the document utilized by the NOPD to initiate a formal disciplinary investigation. The PIB received the DI-1 on 7 March 2008.
According to the DI-1, the investigation was changed from an administrative to a criminal investigation on 13 March 2008 and the criminal investigation concluded on 22 October 2008 when the NOPD received notice that the City Attorney dismissed the municipal charge against Robinson. He stated that the administrative investigation began on 22 October 2008; an extension was requested to complete the investigation, and a sixty-day extension was granted by the CSC. Thus, the NOPD had until approximately 22 February 2009 to complete its administrative investigation of Robinson. On 16 February 2009 Robinson received notice that the NOPD had completed its administrative investigation.
Captain Thomas discussed criminal investigations and administrative investigations, the difference being the burden of proof required. He explained that during a criminal investigation, all of an officer’s constitutional rights are intact. In an administrative investigation, an officer can be compelled to give a statement. Specifically, he stated:
In an administrative investigation we can compare [sic] an administrative statement, which cannot be used against him criminally, so we let the criminal investigation run its course before compelling the person to give an administrative statement.
He opined that an administrative investigation is suspended during the pendency of a criminal investigation. Once the criminal case results in an adjudication or dismissal, the administrative investigation commences.
IsCaptain Thomas conceded that the applicable statute, La. R.S. 40:2531, referred to as the “Police Officer’s Bill of Rights,” does not mention a suspension of an administrative investigation until a criminal investigation is concluded. In fact, he agreed, the statute does not refer to the investigation of any alleged criminal activity.
Captain Thomas admitted that the NOPD did not have a policy suspending the sixty-day period to complete an administrative investigation during the pendency of a criminal investigation or a written policy that states that the criminal investigation ends at the final adjudication in court.[1]
Robinson testified that he has been employed by the NOPD for seventeen years. He stated that he worked a paid detail at Walter L. Cohen High School (“Cohen”). He stated that a student arrived late on 4 March 2008, and that according to school policy, students arriving after 9:00 a.m. must be accompanied by a parent. Thus, Robinson explained that the student was not allowed in the school. The student became belligerent and swung at another *1274 police officer present at the school, Officer Jamaane Roy. Officer Roy escorted the student outside of the building to await a social worker. Robinson stated that the student cursed him. A social worker talked with the student outside and then escorted the student into the building. Robinson testified that as the student passed, the student put her middle finger in his face and said, “F— you, mother f- — .” Robinson stated that he pushed the student back and told her, “Little girl, you’re not going to play me |4like that.” He asserted that the student came at him again, aggressively, putting her middle finger in his face, whereupon he grabbed the student’s shirt and pushed her back to create distance between them, then let go of her. Robinson stated that as he pushed the student backwards, she may have appeared to be bent over a table. Robinson acknowledged that he received a summons to appear in New Orleans Municipal Court relating to the incident. However, he noted that the City Attorney dropped the charges.
Additionally, Robinson admitted that he did not call his precinct within an hour of arriving at the detail at Cohen on 4 March 2008.
Sergeant Omar Diaz stated that he is assigned to the PIB and that he participated in the investigation of Robinson. He noted that the PIB received a call from a student at Cohen, wherein the student alleged that Robinson choked and beat her. In addition to speaking to the student and Officer Roy, Sergeant Diaz spoke with Ann Beck, the social worker. Sergeant Diaz believed Ms. Beck to be credible because she did not know either the student or Robinson.
Sergeant Diaz noted that the criminal and administrative investigations were separate and that they focused on separate things. The criminal investigation deals with criminal law violations and the administrative investigation deals with administrative violations. He stated that after the criminal investigation was completed, the administrative investigation began on 22 October 2008. Due to the time provided an officer to obtain legal counsel, Sergeant Diaz requested an extension to complete the administrative investigation. The request was granted, providing the NOPD an additional sixty days to complete the administrative investigation. After conducting interviews and obtaining statements, Sergeant Diaz recommended that the violation of the rule relative to moral conduct and the |firule relative to performance of duty be sustained. He testified that Robinson’s conduct, violating the municipal ordinance relative to battery, brought discredit to the NOPD and that bringing discredit to the NOPD affects the efficiency of the operation of the NOPD. Sergeant Diaz stated that the student informed him that she did not have any faith in the NOPD or the system, so she was not going forward with pressing the charges.
Ann Beck testified via telephone. Ms. Beck stated that on 4 March 2008, she was employed as a social worker at Cohen. She testified that she was called to the entrance of the school to talk with an upset student. When she arrived, the student was outside the building. The student informed her that she had had a confrontation with Robinson. After talking, Ms. Beck started to escort the student to the school office to telephone a parent. She testified that as the student passed Robinson, the student “gave him” the middle finger. In response, Robinson hit the student with an open hand. Ms. Beck stated the student became angrier and “gave” Robinson the middle finger again and cursed him. At that point, Ms. Beck explained that Robinson grabbed the student *1275 and pushed her onto a desk, with his hands around her neck. She stated that Robinson told the student that she needed to be more respectful. She noted that someone pulled Robinson off the student. Ms. Beck stated that she reported the incident to her supervisor and to the principal. She also contacted the PIB, but was informed that the student was required to make the incident report. Ms. Beck prepared a report within a few hours of the incident.
Lastly, Officer Roy testified that he also worked a detail on 4 March 2008 at Cohen. He indicated that a student arrived late for school. Because late students were not allowed to enter after a certain time without a parent, he explained that | (¡they did not allow the student to enter the school. He testified that they contacted the school administration. While waiting, the student became irate and swung at him. Officer Roy noted that he had to grab her and bring her outside. He stated that when the student reentered the school with the social worker, the student put her middle finger in Robinson’s face. At that point, Robinson grabbed her and informed her that she should respect the police. Officer Roy testified that he did not see Robinson push her and that he did not see Robinson bend her over a table.
Robinson and the NOPD prepared post-hearing memoranda, following which the hearing officer submitted a report to the CSC. The CSC issued a decision finding that an administrative investigation may be converted into a criminal investigation, thus tolling the sixty-day time period pending completion of the criminal investigation. Further, the CSC found that the NOPD established, by a preponderance of the evidence, that the NOPD disciplined Robinson for cause. The CSC concluded that the testimony supported the allegations contained in the disciplinary letter.
From that decision, Robinson filed a notice of appeal, averring that the judgment of the CSC was contrary to the law and evidence.
II.
The CSC has authority to “hear and decide” disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. Art. X, § 12; Pope v. New Orleans Police Dept., 04-1888, p. 5 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. The appointing authority is charged with the operation of its department, and it is "within its discretion to discipline an employee for sufficient cause. The CSC is not charged with such discipline. The authority to |7reduce a penalty can only be exercised if there is insufficient cause for .imposing the greater penalty. Pope, pp. 5-6, 903 So.2d at 4.
The appointing authority has the burden of proving by a preponderance of the evidence that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority. Cure v. Dept. of Police, 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094, citing Maniale v. Dept. of Police, 06-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767. The protection of civil service employees is only against firing or other discipline without cause. La. Const. Art. X, § 12; Cornelius v. Dept. of Police, 07-1257, p. 8 (La.App. 4 Cir. 3/19/08), 981 So.2d 720, 724, citing Fihlman v. New Orleans Police Dept., 00-2360, p. 5 (La.App. 4 Cir. 10/31/01), 797 So.2d 783, 787.
The decision of the CSC is subject to review on any question of law or fact upon appeal to this court, and this court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review. La. Const. Art. X, § 12; Cure, p. *1276 2, 964 So.2d at 1094. In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this court should not modify the CSC order unless it was arbitrary, capricious, or characterized by an abuse of discretion. Id. A decision of the CSC is “arbitrary and capricious” if there is no rational basis for the action taken by the CSC. Id. at p. 2, 964 So.2d at 1095.
III.
Before addressing the merits of Robinson’s appeal, we first address the NOPD’s argument that the appeal should be dismissed for a procedural defect. The NOPD argues that Robinson failed to timely assert assignments of error of the |sCSC’s decision in his application (i.e., notice) for appeal to this court; that is, the NOPD avers that the application for appeal failed to separately and particularly set forth specific assignments of error.
Uniform Rules — Courts of Appeal, Rule 3-1.1, states in pertinent part:
Every application for appeal from a final decision of any administrative body shall be filed with the appropriate administrative body in writing as required by law and shall include an assignment of errors, which shall set out separately and particularly each error asserted and a designation of the portions of the record desired to be incorporated into the transcript. Within 5 days after the filing of an application for appeal, any other party to the appeal may file a designation of additional portions of the record to be included for a proper review of the questions comprised within the assignment of errors. The administrative body shall transmit to a Court of Appeal, as a transcript of the record, only the portions of the record so designated. Costs for the inclusion of any unnecessary part of the record in any transcript may be assessed against the party requiring such inclusion. If by written stipulation filed with the administrative body, all parties agree on the portions of the record to be included in the transcript, only such portions shall be included. In all cases the application for appeal, the assignment of errors and the designation of the record shall be copied into the transcript. The administrative body shall certify the correctness of the transcript of the record.
In his brief, but not in his application for appeal, to this court, Robinson formally assigns errors: that the CSC committed legal error by misapplying La. R.S. 40:2531 and that its decision was arbitrary and capricious for no legal cause existed for the discipline imposed.
First, we note that Robinson failed to separately and particularly set out each assignment of error in his application of appeal to the CSC, an administrative body. We note that the standard appeal form that the CSC provides to public employees to appeal a decision of the appointing authority to the CSC contains no space for |9the employee to assign errors committed by the appointing authority. We conclude therefrom that the CSC does not require a public employee to specifically assign and state an error committed by the appointing authority.
Although our Uniform Rule indicates that an application (i.e., notice) of appeal of a decision to this court requires that the applicant assign errors, this rule is at odds and contrary to both statute and Louisiana Supreme Court jurisprudence.
In Rodrigue v. Rodrigue, 591 So.2d 1171 (La.1992), the Court stated:
Plaintiffs writ application is granted. The judgment of the court of appeal holding that Local Rule 22 of the Rules *1277 of the Thirty-Second Judicial District Court is not in conflict with the provisions of Louisiana Code of Civil Procedure article 1312 is hereby reversed.... The requirements of delivery or mailing of all pleadings under Local Rule 22 constitutes service under Code of Civil Procedure article 1313. Article 1312 specifically exempts any pleading not required by law to be. in writing from service. Code of Civil Procedure article 1701 provides that preliminary defaults may be obtained by oral motion in open court or by written motion. Since local rules of court cannot conflict with legislation, see Trahan v. Petroleum Cas. Co., 250 La. 949, 200 So.2d 6 (1967), Local Rule 22 of the Thirty-Second Judicial District Court is hereby declared null and void to the extent it conflicts with Code of Civil Procedure article 1312. The judgment of default entered by the trial court is hereby reinstated. [Emphasis supplied.]
We note that La. C.C.P. art. 2129 does not require an appellant in this court to assign errors in his brief, while the Uniform Rules, Courts of Appeal, Rule 2-12.4 provide otherwise.[2] In light of Rodrigue, we cannot enforce it.
In Rocque v. Department of Health and Human Resources, Office of Secretary, 505 So.2d 726, 728 (La.1987), the Supreme Court held that summary dismissal of an appeal where the notice of appeal does not contain assignments of error “acts as a trap for the unwary appellant who does not learn of the insufficiency of his appeal ... until the time for remedying any deficiencies has already elapsed,” and is thus unreasonable and unduly burdensome on appellants. See La. Const. Art. X, § 8. Accordingly, we hold that an appellant in a civil service matter need not in his motion, application, or notice of appeal assign specific error(s) committed by the CSC.
IV.
In his first assignment of error, Robinson argues that the CSC committed legal error and misapplied La. R.S. 40:2531. That statute provides in pertinent part:
When a formal and written complaint is made against any police employee or law enforcement officer, the superintendent of state police or the chief of police or his authorized representative shall initiate an investigation within fourteen days of the date the complaint is made. Except as otherwise provided in this Paragraph, each investigation of a police employee or law enforcement officer which is conducted under the provisions of this Chapter shall be completed within sixty days. However, in each municipality which is subject to a Municipal Fire and Police Civil Service law, the municipal police department may petition the Municipal Fire and Police Civil Service Board for an extension of the time within which to complete the investigation. The board shall set the matter for hearing and shall provide notice of the hearing to the police employee or law enforcement officer who is under investigation. The *1278 police employee or law enforcement officer who is under investigation shall have the right to In attend the hearing and to present evidence and arguments against the extension. If the board finds that the municipal police department has shown good cause for the granting of an extension of time within which to complete the investigation, the board shall grant an extension of up to sixty days. Nothing contained in this Paragraph shall be construed to prohibit the police employee or law enforcement officer under investigation and the appointing authority from entering into a written agreement extending the investigation for up to an additional sixty days. The investigation shall be considered complete upon notice to the police employee or law enforcement officer under investigation of a pre-disciplinary hearing or a determination of an unfounded or unsustained complaint. Further, nothing in this Paragraph shall limit any investigation of alleged criminal activity.
La. R.S. 40:2531 B(7). [Emphasis supplied.]
Further, any discipline, demotion, dismissal, or adverse action of any sort taken against a police employee or law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity. La. R.S. 40:2531 C.
Robinson avers that the investigation began on 7 March 2008, with the NOPD’s completion of its DI-1 form. The DI-1 provided a control number of 2008-0156-C. He notes that another document bearing control number 2008-0156-C contains a notation that the investigation was changed from administrative to criminal on 13 March 2008. The NOPD notified Robinson of a pre-disciplinary hearing on 16 February 2009, more than sixty days (actually almost a year) after 7 March 2008. Robinson concludes that the NOPD failed to comply with La. R.S. 40:2531’s sixty-day limitation, rendering the discipline imposed an absolute nullity.
The NOPD argues that the criminal investigation suspended the sixty-day period to complete the administrative investigation. In support, it cites Wyatt v. Harahan Municipal Fire and Police Civil Service Board, 2006-0081 (La.App. 5 Cir. 7/25/06), 935 So.2d 849, and Franklin v. Dept. of Police, 10-1581, unpub. (La.App. 4 Cir. 4/6/11), 2011 WL 9165414, writ denied, 11-1074 (La.9/23/11), 69 So.3d 1157.
In Wyatt, a police officer (Wyatt) reported that his police vehicle had been vandalized. Later, the appointing authority learned that the officer had been involved in a “fender-bender” traffic accident. Wyatt, pp. 2-3, 935 So.2d at 851. The investigation of the report of vandalism to the vehicle resulted in a referral to the district attorney for possible prosecution. Id. at p. 7, 935 So.2d at 853. Thereafter, an administrative investigation was completed. The court determined that the investigation was clearly an inquiry into a criminal activity and not subject to the sixty-day rule. Id. The court found that the subsequent administrative investigation was completed timely.
In Franklin, the PIB received an anonymous tip on 25 September 2007, regarding an officer (Franklin) working a paid detail at the same time he was on duty. Franklin, 10-1581, p. 1. The NOPD requested an extension of the sixty-day time limitation on 22 October 2007. The investigating officer completed the NOPD incident report on 20 February 2008. Due to the possibility of payroll fraud, the investigating officer forwarded information to the District Attorney’s office. Id. The District Attorney notified the NOPD that Officer Franklin had been accepted into the *1279 diversionary program. On 9 April 2009, the investigating officer received notice that the officer completed the diversionary program. This court determined that the start of the administration investigation did not commence until after the completion of the criminal investigation. Id. at p. 2. We found that the administrative investigation commenced on 9 April 2009 when | isreceipt of the notice of the end of the criminal investigation was received, and ended on 16 April 2009, when a request for a disciplinary hearing was submitted. Thus, we concluded that the administrative investigation met the sixty-day requirement provided in La. R.S. 40:2531. Id.
Robinson argues that nothing in La. R.S. 40:2531 allows for the suspension of the timé provided for the administrative investigation to be completed once it begins to run. We agree. In support of his argument that La. R.S. 40:2531 must be applied as written, Robinson cites numerous code articles regarding statutory construction. Further, Robinson cites Doerr v. Mobil Oil Corp., 00-0947 (La.12/19/00), 774 So.2d 119, wherein, the Court noted that “[jjudicial decisions ... are not intended to be an authoritative source of law.” Id. at p. 13, 774 So.2d at 128.
La. R.S. 40:2531 B(7) sets forth certain time limitations for the beginning and end of an administrative investigation against a police officer. Only in the last sentence does the statute state: “nothing in this Paragraph shall limit any investigation of alleged criminal activity.” A common sense reading of the statute means simply that the time limitations do not apply to criminal investigations. In other words, criminal investigations may take as long as necessary. To read the statute as the NOPD argues would completely eviscerate it; that is, to adhere to the NOPD’s argument would disembowel the Police Officer’s Bill of Rights. This we decline to do.
Captain Thomas admitted that the PIB could compel administrative statements from officers under investigation while a criminal investigation or court proceeding is pending. The NOPD simply chooses not to, by adding something to 114the statute that does not exist, thereby excusing its failure to comply with La. R.S. 40:2531 B(7).
Therefore, we find that the NOPD had sixty, or possibly 120 days, from 7 March 2008 in which to complete its administrative investigation. This it did not do. Consequently, the discipline imposed against Robinson is an absolute nullity.
y.
Accordingly, for the foregoing reasons, the decision of the CSC is reversed and the discipline imposed against Robinson is dismissed.
REVERSED.

. In O’Hern v. Department of Police, 12-0600 (La.App. 4 Cir. 12/19/12), - So.3d -, we held that the administrative investigation was suspended during the pendency of the criminal investigation. We disagree with that panel. See Tobias, J., dissenting. In any event, there, the NOPD claimed that the criminal investigation ended once the case was handed over to the District Attorney, not upon the conclusion of the criminal matter. It appears that the NOPD takes a different and contradictory view: that a criminal investigation ends upon the say-so of the investigative officer, not upon any kind of objective standard or policy.

. In pertinent part, Rule 2-12.4 states:
The brief of the appellant or relator shall set forth the jurisdiction of the court, a concise statement of the case, the ruling or action of the trial court thereon, a specification or assignment of alleged errors relied upon, the issues presented for review, an argument confined strictly to the issues of the case, free from unnecessary repetition, giving accurate citations of the pages of the record and the authorities cited, and a short conclusion stating the precise relief sought. [Emphasis supplied.]
See also Uniform Rules-Courts of Appeal, Rule 3-1.5.