MAX N. TOBIAS, JR., Judge.
The appellant, Officer James Adams, appeals the decision of the Civil Service Commission (“CSC”) that terminated him from employment with the New Orleans Police Department (“NOPD”). After a review of the record and applicable law, we affirm the decision.
The facts are not in dispute. Officer Adams, then a sixteen-year veteran with the NOPD, was absent from work for an extended period of time due to injury and illness. On 18 August 2009, the NOPD conducted a Rule IX hearing to determine whether Officer Adams could return to his position as a police officer and, if so, when. Captain Bruce Adams conducted the hearing. At the conclusion of the hearing, the Rule IX hearing committee recommended that Officer Adams be terminated; Superintendent Warren Riley agreed. The basis of the termination was a violation of Rule IX, Section 1, entitled “Maintaining Standards of Service.” Paragraph 1.1 provides in pertinent part:
When an employee in the classified service is unable or unwilling to perform the duties of his/her position in a satisfactory manner, ... the appointing authority shall take action warranted by the circumstances to maintain the standards of effective service.
One of the actions permitted his removal from service.
*1005 The NOPD terminated Officer Adams’ employment on 18 August 2009. He appealed and a hearing took place on 18 May 2011.
Captain Adams testified before the hearing examiner that he recommended termination after reviewing medical information presented by Officer Adams indicating that he was unable to return to work in any capacity. Captain Adams stated that he also made the recommendation because Officer Adams failed to provide any medical information as to when he would return to work and because of the extended period he had already been absent. On 20 August 2008, Officer Adams went onto sick leave with pay until 6 February 2009 and was then on leave without pay until his subsequent termination.
Officer Adams testified at the NOPD hearing that he needed to see one more doctor before returning to work, but, because of financial difficulties, he was unable to schedule the appointment. He contended that he was capable of returning to work after September 2009. However, Officer Adams failed to provide sufficient medical evidence to support his position. Officer Adams claimed that his headaches, vertigo, and “spells/seizures/convulsive” were related to diabetes and high blood pressure, which were now under control. He provided correspondence dated 16 February 2011 from a registered nurse with Baylor Endocrine Center stating that his type-2 diabetes was under control and that “he is overall capable of carrying on normal physical activities of daily living.” Officer Adams was invited to supplement the record with medical records to support his return to work, but failed to do so.
In addition to the testimony of Captain Adams and Officer Adams, the hearing examiner heard testimony from Lieutenant Carol Aldridge, assigned to the Administrative Duties Division (“ADD”) and Detail and Limited Duty Status to the district. She was the ADD Commander in 2008-09. As part of her duties, she supervised those officers who were assigned to the ADD for medical or illness-related reasons. Officer Adams was assigned to the ADD while Lieutenant Aldridge was its commander.
Lieutenant Aldridge explained that when an officer has been transferred to the ADD, he/she is required to submit reports concerning his/her status. This is done on a Form 50, entitled “Physician Examination Certification.” If the officer is on limited-duty status, the Form 50 is submitted thirty days from the date of the previous submission of Form 50. For officers who are not working at all, the form is submitted every sixty days. The form contains medical information concerning the officer’s condition and addresses whether or not the officer can return to any duty at that time.
Although Officer Adams had been absent from work since late August 2008, Lieutenant Aldridge testified that on 6 August 2009, Officer Adam sent to the ADD seven Form 50s that he was required to submit per departmental regulations; the record reflects that two Form 50s had previously been filed with the ADD. All nine forms indicated that his doctors recommended that he was “unable to return in any capacity at this time.” His diagnoses included an injury to the back of his leg, headaches, vertigo, and “spells/seizures/convulsive.”
Lieutenant Aldridge testified that part of her job is to put together a Rule IX hearing package; the hearings are held about every three months. The package for Officer Adams included the Form 50s and his attendance records. Officer Adams also had the opportunity to say and/or submit any additional information that could help his case. Lieutenant Al-dridge also prepared a script for the superior officer in charge of the meeting. She *1006 did not offer any conclusions or recommendation concerning Officer Adams; she merely presented the facts.
The CSC reviewed the hearing examiner’s report recommending termination and agreed. Its opinion was issued on 27 April 2012. This appeal followed.
The CSC has authority to “hear and decide” disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const. Art. X, § 12; Pope v. New Orleans Police Dept., 04-1888, p. 5 (La.App. 4 Cir. 4/20/05), 903 So.2d 1, 4. The appointing authority is charged with the operation of its department, and it is within its discretion to discipline an employee for sufficient cause. The CSC is not charged with such discipline. The authority to modify a penalty can only be exercised if there is insufficient cause for imposing the greater penalty. Pope, pp. 5-6, 903 So.2d at 4. See also Robinson v. Dept. of Police, 12-1039, pp. 6-7 (La.App. 4 Cir. 1/16/13), 106 So.3d 1272, 1275.
The appointing authority has the burden of proving by a preponderance of the evidence that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority. Cure v. Dept. of Police, 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094, citing Marziale v. Dept. of Police, 06-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767. The protection of civil service employees is only against firing or other discipline without cause. La. Const. Art. X, § 12; Cornelius v. Dept. of Police, 07-1257, p. 7 (La.App. 4 Cir. 3/19/08), 981 So.2d 720, 724, citing Fihlman v. New Orleans Police Dept., 00-2360, p. 5 (La.App., 4 Cir. 10/31/01), 797 So.2d 783, 787. See also Robinson, p. 7, 106 So.3d at 1272.
The decision of the CSC is subject to review on any question of law or fact upon appeal to this court, and this court may only review findings of fact using the manifestly erroneous/clearly wrong standard of review. La. Const. Art. X, § 12; Cure, p. 2, 964 So.2d at 1094. In determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, this court should not modify the CSC order unless it was arbitrary, capricious, or characterized by an abuse of discretion. Id. A decision of the CSC is “arbitrary and capricious” if there is no rational basis for the action taken by the CSC. Id., p. 2, 964 So.2d at 1095. See also Robinson, p. 7, 106 So.3d at 1272.
We do not find that the CSC was arbitrary, capricious, or abused its discretion. Officer Adams was told he could supplement the Rule IX hearing record with medical evidence that he could return to work in September 2009, as he claimed. He did not do so. Likewise, he was again invited to introduce such evidence into the record before the hearing examiner, but did not. Even the 16 February 2011 letter from Baylor Endocrine Center about Officer Adams stated that “he is overall capable of carrying on normal physical activities of daily living,” but did not state that he was capable of returning to work at that time. We find that every opportunity was afforded Officer Adams, but he failed to submit the necessary information from his physician indicating that he could return to work at that time or on a date certain in the near future.
Based on the foregoing, we affirm the decision of the CSC terminating Officer Adams from his position as a police officer with the NOPD.

AFFIRMED.